EVAN ROSE, Cal. Bar No. 253478
MATTHEW D. GOLD, N.Y. Bar No. 2073963
LAURA FREMONT, Cal. Bar No. 159670
ERIC EDMONDSON, D.C. Bar No. 450294
KERRY O'BRIEN, Cal. Bar No. 149264
DAVID M. NEWMAN, Cal. Bar No. 54218
LINDA K. BADGER, Cal. Bar No. 122209

Address:    Federal Trade Commission
            901 Market Street, Suite 570
            San Francisco, CA 94103

Email:      erose@ftc.gov; mgold@ftc.gov; lfremont@ftc.gov;
            eedmondson@ftc.gov; kobrien@ftc.gov;
            dnewman@ftc.gov; lbadger@ftc.gov

Tel. / Fax:  (415) 848-5100 / (415) 848-5184

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
San Francisco Division

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>AT&T MOBILITY LLC, a limited liability company,<br><br>    Defendant. | Case No. 14-cv-04785-EMC<br><br>**PLAINTIFF FTC'S SUR-REPLY IN OPPOSITION TO DEFENDANT AT&T'S MOTION TO DISMISS**<br><br>Hearing Date:   Mar. 12, 2015<br>Time:           9:30 a.m.<br>Courtroom:      5, 17th Floor |

**Sur-reply in Opp. to Motion to Dismiss – 14-cv-04785-EMC**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT ..................................................................................................................... 2

    A.   Reclassification would not alter the FTC's enforcement authority or the Court's

        remedial powers as to AT&T's violations prior to reclassification. ............................... 2

        1.   AT&T's data throttling practices prior to reclassification are unfair and

            deceptive practices under Section 5. .......................................................................... 3

        2.   The FCC's Reclassification Order does not apply retroactively. ............................. 4

        3.   Section 13(b) authorizes equitable relief to address AT&T's past misconduct......... 5

        4.   AT&T's cited authority is inapposite. ...................................................................... 7

    B.   The FCC's Reclassification Order bolsters the activity-based interpretation of

        Section 5. ........................................................................................................................ 8

III. CONCLUSION .................................................................................................................. 9

1
2

**TABLE OF AUTHORITIES**

**Cases**

3   *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ..........................................4

4   *Chadmoore Commc'ns v. FCC*, 113 F.3d 235 (D.C. Cir. 1997) ..........................4

5   *Chenault v. U.S. Postal Serv.*, 37 F.3d 535 (9th Cir. 1994)...............................4

6   *FTC v. Evans Prods. Co.*, 775 F.2d 1084 (9th Cir. 1985) ..............................5, 7

7   *FTC v. Gill*, 71 F. Supp. 2d 1030 (C.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001) ..............5

8   *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982) ...............................6

9   *FTC v. Magui Publishers, Inc.*, 1991 WL 90895 (C.D. Cal. Mar. 28, 1991) ...............5

10  *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25 (D.D.C. 1999) ...........................5

11  *FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008) .................7

12  *FTC v. Pac. Med. Clinics Mgmt., Inc.*, 1992 WL 121677 (S.D. Cal., Apr 08, 1992).............5

13  *FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994)..................................6

14  *FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009)......................................6

15  *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 1013 (N.D. Ind. 2000) .................5

16  *FTC v. Va. Homes Mfg. Corp.*, 509 F. Supp. 51 (D. Md. 1981), *aff'd*, 661 F.2d 920

17      (4th Cir. 1981)...........................................................5

18  *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir.1988)...............5

19  *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005) ......................8

20  *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997) ...............4

21  *In re Am. Electric Power Co.*, SEC Rel. No. 28084, 2006 WL 305806

22      (S.E.C. Feb. 9, 2006)......................................................8

23  *In re Giant Food Shopping Ctr., Inc.*, 55 F.T.C. 2058 (1959).........................5

24  *In re Google, Inc.*, 152 F.T.C. 435 (2011) ..........................................9

25  *In re Google, Inc.*, FTC Docket No. C-4499 (Dec. 5, 2014), *press release available at*

26      http://www.ftc.gov/news-events/press-releases/2014/12/ftc-approves-final-order-

27      case-about-google-billing-kids-app .........................................9

28  *In re Leonard F. Porter, Inc.*, 88 F.T.C. 546 (1976) ................................8

**Sur-reply in Opp. to Motion to Dismiss – 14-cv-04785-EMC**                    **Page iii**

*In re Renaire Corp.*, 55 F.T.C. 1169 (1959) ............................................................5

*Joffe v. Google, Inc.*, 746 F.3d 920 (9th Cir. 2013) .................................................9

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990) ......................4

*Kansas v. Nebraska*, 2015 WL 751358 (U.S. Feb. 24, 2015)..............................6, 7

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) ............................................4

*Mitchell v. Robert Demario Jewelry, Inc.*, 361 U.S. 288 (1960) .............................6

*Mobile Relay Assocs. v. FCC*, 457 F.3d 1 (D.C. Cir. 2006) ....................................4

*Nat'l Cable & Telecomms. Ass'n v. FCC*, 567 F.3d 659 (D.C. Cir. 2009)................4

*Pine Tree Med. Assocs. v. Sec'y of Health & Human Servs.*, 127 F.3d 118

    (1st Cir. 1997) ...................................................................................................7

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946)...........................................6, 7

*Saint Alphonsus Med. Ctr. v. St. Luke's Health  Sys., Ltd.*, 2014 WL 407446

    (D. Idaho Jan. 24, 2014), *aff'd*, 2015 WL 525540 (9th Cir. Feb. 10, 2015)..................5–6

*United States v. Moore*, 340 U.S. 616 (1951) ........................................................7

## Statutes, Regulations & Rules

15 U.S.C. § 45........................................................................................................1, 2

15 U.S.C. § 45(a)(1)...............................................................................................2, 3

15 U.S.C. § 45(a)(2).....................................................................................1, 2, 3, 5

15 U.S.C. § 45(b) ......................................................................................................3

15 U.S.C. § 53(b) ..............................................................................................1, 2, 5

47 U.S.C. § 503(b)(6) ...............................................................................................5

*Protecting and Promoting the Open Internet*, Report and Order on Remand,

    Declaratory Ruling, and Order, FCC 15-24, GN Docket 14-28

    (adopted Feb. 26, 2015) (unreleased) .................................................................1

**Other**

*FCC Adopts Strong, Sustainable Rules to Protect the Open Internet*, FCC news release,
  Feb. 26, 2015, *available at* http://www.fcc.gov/document/fcc-adopts-strong-
  sustainable-rules-protect-open-internet................................................................................1

Google Fiber "About" webpage, https://fiber.google.com/about/ ....................................9

Letter from Gary L. Phillips, General Attorney & Assoc. General Counsel, AT&T
  Services, Inc., to Marlene H. Dortch, Secretary, FCC, Jan. 8, 2015, *available at*
  http://apps.fcc.gov/ecfs/document/view?id=60001012390 .................................................1

Letter from Gary L. Phillips, General Attorney & Assoc. General Counsel, AT&T
  Services, Inc., to Marlene H. Dortch, Secretary, FCC, Feb. 18, 2015, *available at*
  http://apps.fcc.gov/ecfs/document/view?id=60001030836 .................................................1

1    **I.     INTRODUCTION**

2          In its Reply, AT&T Mobility LLC ("AT&T") incorrectly asserts that a proposal before

3    the Federal Communications Commission ("FCC") would, if adopted, deprive the Federal Trade

4    Commission ("FTC") of the authority to bring this case even under the activity-based

5    interpretation of the common carrier exemption.  (*See* Dkt. #36 at 12–13)  On February 26, 2015,

6    the FCC voted to approve the proposal—an order that reclassifies broadband internet services,

7    including the mobile data services at issue, as common carriage ("Reclassification Order").[1]

8    Accordingly, the parties sought leave to file additional briefing on what effect, if any, the

9    Reclassification Order has on AT&T's Motion to Dismiss.  (Dkt. #43)

10          The Reclassification Order would not relieve AT&T of liability for its unfair and

11   deceptive throttling program, which injured millions of unlimited data customers.  To be sure, if

12   the Reclassification Order goes into effect as proposed, the common carrier exemption in Section

13   5(a)(2) of the FTC Act, 15 U.S.C. § 45(a)(2), will likely limit the FTC's prospective enforcement

14   authority over mobile data services.[2]  The Reclassification Order, however, would not apply to

15   past conduct (and indeed would be unlawful if it did).  The order, and its accompanying rules,

16   establish only a "standard for future conduct."  (FCC News Release at 2)  Therefore,

17   reclassification has no effect on the FTC's authority under Sections 5 and 13(b) of the FTC Act,

18

19   _____

20          [1] *Protecting and Promoting the Open Internet*, Report and Order on Remand,
     Declaratory Ruling, and Order, FCC 15-24, GN Docket 14-28 (adopted Feb. 26, 2015).  As of
21   this writing, the FCC has not yet released the text of the order, but has issued a detailed news
     release summarizing it.  *See FCC Adopts Strong, Sustainable Rules to Protect the Open Internet*,
22   FCC news release, Feb. 26, 2015 ("FCC News Release") (link in TOA).

23          [2] As a threshold matter, the Reclassification Order is not yet in effect.  The FCC has not
     released the text of the order or published it in the Federal Register.  In addition, the order is
24   likely to face legal challenges that may further delay its implementation.  AT&T itself has argued
     in recent letters to the FCC that reclassification of broadband is unlawful, and that, even if
25   reclassification of wireline broadband were lawful, reclassification of mobile data would still be
     unlawful.  *See, e.g.*, Letters from Gary L. Phillips, General Attorney & Assoc. General Counsel,
26   AT&T Services, Inc., to Marlene H. Dortch, Secretary, FCC, Jan. 8, 2015, Feb. 18, 2015 (links
     in TOA).  In any event, as discussed herein, reclassification, as proposed, does not exempt
27   AT&T's unlawful conduct from the FTC's authority or deprive this Court of authority to issue
     equitable relief.
28

**Sur-reply in Opp. to Motion to Dismiss – 14-cv-04785-EMC**                              **Page 1**

15 U.S.C. §§ 45, 53(b), to seek equitable relief for AT&T's past violations and provides no basis for dismissal.

In fact, the Reclassification Order further demonstrates that a status-based interpretation of the exemption would lead to irrational results and undermine the FTC's consumer protection mission. (*See* Dkt. #33 at 15–17)  Under that flawed interpretation, more practices would trigger the exemption post-reclassification, such that an even broader swath of companies would be exempt from FTC scrutiny in all of their diverse business activities—thereby creating a confusing, illogical, and ever-shifting patchwork of FTC jurisdiction; inevitable gaming of this glaring loophole; and, ultimately, increased injury to consumers.

## II.   ARGUMENT

### A.   Reclassification would not alter the FTC's enforcement authority or the Court's remedial powers as to AT&T's violations prior to reclassification.

AT&T argued in its Reply that, if the Reclassification Order were adopted, the FTC would lose its authority to prosecute this action, even under an activity-based interpretation of the common carrier exemption.  (Dkt. #36 at 12–13)  Contrary to AT&T's assertion, reclassification would in no way limit the FTC's jurisdiction or this Court's authority over AT&T's conduct prior to reclassification.

The FTC brought this action under Sections 5 and 13(b) of the FTC Act.  Section 5 merely defines the pertinent unlawful conduct—"unfair or deceptive acts or practices in or affecting commerce," 15 U.S.C. § 45(a)(1)—that the FTC is authorized to pursue when the conduct is, *inter alia*, not provided on a common carrier basis.  15 U.S.C. § 45(a)(2).  Because, as discussed below, the Reclassification Order does not apply retroactively, AT&T's provision of mobile data preceding its effective date remains conduct subject to Section 5.  Moreover, since AT&T's unlawful practices remain subject to Section 5, this is a "proper case" for this Court under Section 13(b), and the FTC may seek the full panoply of the Court's equitable remedies, including backward-looking monetary relief.  Finally, the cases AT&T cites are inapposite.

1

### 1.    AT&T's data throttling practices prior to reclassification are unfair and deceptive practices under Section 5.

Section 5 of the FTC Act sets out the unlawful conduct that the FTC is "empowered" to pursue. Specifically, Section 5(a)(1) of the FTC Act establishes that "unfair or deceptive acts or practices in or affecting commerce" are unlawful. 15 U.S.C. § 45(a)(1). Moreover, Section 5(a)(2) makes clear that "[t]he Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, except . . . common carriers subject to the Acts to regulate commerce . . . from using . . . unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(2). In other words, Section 5(a)(2) directs and empowers the FTC to enforce these prohibitions, with exceptions in specified contexts (including activities constituting telecommunications common carriage).

Despite AT&T's contention, Section 5 is not limited to conduct that may occur in the future. (*See* Dkt. #36 at 13 n.13) Indeed, for decades the FTC has validly addressed past conduct as violations of Section 5 and, as explained below, has properly invoked the authority of the courts pursuant to Section 13(b) to obtain equitable relief for such conduct. Even in administrative actions, in which the FTC may issue only cease and desist orders, Section 5 expressly contemplates Commission action based upon past conduct. The Commission may initiate its administrative process whenever is has reason to believe that an entity "*has been or is using* any . . . unfair or deceptive act or practice," 15 U.S.C. § 45(b) (emphasis added).

Here, AT&T's unlawful throttling program began in 2011 and continues to this day. (Dkt. #1 ¶¶ 15–18) As such, for more than three years (and running), AT&T has engaged in unfair and deceptive conduct in the provision of mobile data. Throughout this period, AT&T has not been acting as a "common carrier[] subject to the Acts to regulate commerce." *See* 15 U.S.C. § 45(a)(2). Accordingly, AT&T's throttling practices were unlawful when they occurred, and the FTC is empowered to pursue them.

The FCC's regulatory reclassification could alter the application of Section 5(a)(2) only if it retroactively changed the character of AT&T's past actions (*i.e.*, if it declared that mobile data services have always been common carrier services under the Communications Act). However,

1    as explained in the next section, the Reclassification Order would not—and in fact could not

2    legally—effect such a change.

3              **2.      The FCC's Reclassification Order does not apply retroactively.**

4              The FCC's Reclassification Order would apply only to conduct committed after the order

5    takes effect.  FCC rulings that alter the regulatory classification of a communications service

6    cannot change "the past legal consequences of past actions."  *Nat'l Cable & Telecomms. Ass'n v.*

7    *FCC*, 567 F.3d 659, 670 (D.C. Cir. 2009) (quoting *Mobile Relay Assocs. v. FCC,* 457 F.3d 1, 11

8    (D.C. Cir. 2006)); *see also Chadmoore Commc'ns v. FCC*, 113 F.3d 235, 240 (D.C. Cir. 1997)

9    (FCC's "legislative rule[s] may only be applied prospectively").  Indeed, broadband providers

10   would undoubtedly find it unjust if the FCC sought to enforce the new rules on conduct that

11   occurred before the rules were implemented.

12             More generally, the Supreme Court has established that "administrative rules will not be

13   construed to have retroactive effect unless their language requires this result."  *Bowen v.*

14   *Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  "[T]he principle that the legal effect of

15   conduct should ordinarily be assessed under the law that existed when the conduct took place has

16   timeless and universal appeal."  *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994)

17   (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J.,

18   concurring)).  That is, there is a "traditional presumption against applying statutes affecting

19   substantive rights, liabilities, or duties to conduct arising before their enactment."[3]  *Id.* at 278.

20             Here, no statute requires reclassification to have retroactive effect, and it is inconceivable

21   that the FCC's order would do so.  And the order, if applied as AT&T suggests, would without

22   question affect the FTC's substantive rights, and thus the rights of the injured consumers that the

23

24

25              [3]  Even changes that are merely "jurisdictional" are subject to the presumption against
     retroactivity where the changes would "alter the substantive rights of a party and increase [or, as
26   in this case, reduce] a party's liability."  *See Hughes Aircraft Co. v. United States ex rel.*
     *Schumer*, 520 U.S. 939, 950 (1997) (quoting *Chenault v. U.S. Postal Serv.*, 37 F.3d 535, 539 (9th
27   Cir. 1994)).  Permitting the FCC's order to have retroactive effect would not "simply *change*[]
     the tribunal that is to hear the case."  *See id.* at 951 (quoting *Landgraf*, 511 U.S. at 274).
28

**Sur-reply in Opp. to Motion to Dismiss – 14-cv-04785-EMC**                                          **Page 4**

FTC seeks to make whole.[4]  It would effectively extinguish the monetary claims of millions of unlimited customers injured by AT&T's unfair and deceptive conduct.[5]

**3.** **Section 13(b) authorizes equitable relief to address AT&T's past misconduct.**

The FTC properly invoked Section 13(b) in this matter because, as established above, AT&T's conduct violates Section 5 of the FTC Act and is not, and has not to date been, "subject to the Acts to regulate commerce." *See* 15 U.S.C. § 45(a)(2).  The second proviso of Section 13(b) establishes that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction."  15 U.S.C. § 53(b).  The Ninth Circuit and other courts have long held that the "proper cases" in which permanent injunctions may be granted are any cases concerning "violations of *any provisions of law enforced by the Commission*."  *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1086–87 (9th Cir. 1985) (citations omitted); *accord  FTC v. Va. Homes Mfg. Corp.*, 509 F. Supp. 51, 54 (D. Md. 1981), *aff'd*, 661 F.2d 920 (4th Cir. 1981); *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 36 (D.D.C. 1999); *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 1013, 1016 (N.D. Ind. 2000) (citing *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1027–28 (7th Cir.1988); *FTC v. Gill*, 71 F. Supp. 2d 1030, 1047 (C.D. Cal. 1999), *aff'd*, 265 F.3d 944 (9th Cir. 2001); *FTC v. Pac. Med. Clinics Mgmt., Inc.*, 1992 WL 121677, at *3 (S.D. Cal. Apr. 8, 1992); *FTC v. Magui Publishers, Inc.*, 1991 WL 90895, at *15 (C.D. Cal. Mar. 28, 1991); *Saint Alphonsus Med. Ctr. v. St. Luke's Health  Sys.,*

---

[4]  AT&T's reliance on *In re Renaire Corp.*, 55 F.T.C. 1169 (1959), and *In re Giant Food Shopping Center, Inc.*, 55 F.T.C. 2058 (1959), is misplaced for that reason.  In *Renaire*, on which the Commission relied in *Giant Food*, the Commission gave immediate effect to a change in law because the amendment "merely provides additional machinery for enforcing preexisting statutory responsibilities [and] does not affect substantive rights."  55 F.T.C. at 1193.  Here, to give retroactive effect to reclassification would indisputably affect substantive rights of the injured consumers and the FTC in seeking to obtain relief for prior unlawful conduct.

[5]  According to AT&T, the FCC is poised to sanction AT&T for its throttling program.  (Dkt. #36 at 12)  FCC action is not, however, a substitute for the relief sought by the FTC.  The FCC is not authorized to seek refunds for injured consumers, and its enforcement authority is limited to conduct going back one year.  47 U.S.C. § 503(b)(6).  AT&T's throttling program has been in effect for more than three years, and has, over the course of that time, inflicted economic harm on millions of customers.

**Sur-reply in Opp. to Motion to Dismiss – 14-cv-04785-EMC** **Page 5**

1    *Ltd.*, 2014 WL 407446, at \*20 (D. Idaho Jan. 24, 2014), *aff'd*, 2015 WL 525540 (9th Cir. Feb.

2    10, 2015).  Accordingly, because AT&T's conduct violates Section 5, the present matter is a

3    "proper case" under Section 13(b), which triggers the Court's full equitable authority.

4         Moreover, for more than three decades, courts have consistently held that Section 13(b)

5    authorizes the FTC to seek not only forward-looking mandatory or prohibitory injunctions, but

6    also equitable monetary relief to remedy injuries caused by past misdeeds.  The proviso in

7    Section 13(b) that authorizes permanent injunctions also necessarily constitutes an affirmative

8    Congressional grant of authority for monetary equitable remedies such as restitution and

9    disgorgement.  The Ninth Circuit, in the first appellate decision to construe Section 13(b) after

10   Congress enacted it in 1973, held that, "because that section gives the court authority to grant a

11   permanent injunction, it also by implication gives the court authority to afford all necessary

12   ancillary relief, including rescission of contracts and restitution."  *FTC v. H.N. Singer, Inc.*, 668

13   F.2d 1107, 1112 (9th Cir. 1982).  The Ninth Circuit has repeatedly reaffirmed this holding.  *See,*

14   *e.g.*, *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009); *FTC v. Pantron I Corp.*, 33 F.3d

15   1088, 1102 (9th Cir. 1994).

16        The *Singer* Court relied primarily on *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946),

17   in which the Supreme Court ruled that, "[u]nless a statute in so many words, or by necessary and

18   inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction

19   is to be recognized and applied."  *Id.* at 398 (affirming monetary remedy to redress consumers'

20   injuries from landlord's violation of wartime rent control statute).  Even statutes that authorize

21   injunctions but do not specifically mention monetary remedies, such as Section 13(b) of the FTC

22   Act, are construed to authorize such remedies, because "the comprehensiveness of [a court's]

23   equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative

24   command," and the court's authority to exercise "the full scope of that jurisdiction" does not

25   require explicit statutory language providing "affirmative confirmation of the power to order

26   reimbursement."  *See Mitchell v. Robert Demario Jewelry, Inc.*, 361 U.S. 288, 291 (1960).

27        The Supreme Court reaffirmed this doctrine's continuing validity as recently as this past

28   week.  In *Kansas v. Nebraska*, 2015 WL 751358 (U.S. Feb. 24, 2015), the Court, sitting as a

court of equity in exercising its original jurisdiction over controversies between states, cited *Porter* to invoke the "enhanced remedial power" of courts of equity to "disgorge profits gained from violating a federal statute." *Id.* at \*10. Courts' "equitable authority to grant remedies is at its apex when public rights and obligations are . . . implicated." *Id.* at \*16.[6]

Thus, in the present case, the Court has full authority to order appropriate equitable remedies to redress AT&T's past misconduct. AT&T is therefore wrong in contending that the Reclassification Order would deprive the FTC of "legal authority to prosecute this action" and leaves it "without a legally cognizable interest in the [C]ourt's resolution of the issue." (*See* Dkt. #36 at 13 (citations and emendations omitted)) The FTC would retain an interest in obtaining equitable relief—including monetary relief—for the harm suffered by the millions of consumers impacted by AT&T's unlawful practices during the period that AT&T has provided mobile data on a non-common carrier basis. And this Court retains the authority to grant such relief.

### 4.  AT&T's cited authority is inapposite.

The cases AT&T cites for the proposition that the FTC would no longer have a legally cognizable interest in resolution of its Complaint after reclassification are inapposite. In *Pine Tree Medical Associates v. Secretary of Health & Human Services*, 127 F.3d 118 (1st Cir. 1997), a statute declared certain conduct lawful (issuing guidelines without notice and comment rulemaking) when it had previously been unlawful. *Id.* at 121. The court found the plaintiff's challenge to the issuance of rules without notice and comment moot, because the plaintiff could no longer obtain the relief it sought. Here, reclassification does not change the lawfulness of AT&T's conduct prior to reclassification. And, as the Section 13(b) case law makes clear, the Court has the authority to address such unlawful conduct.

---

[6] Indeed, Section 13(b) authorizes courts to order equitable remedies such as restitution even where they opt not to issue an injunction covering forward-looking conduct. *Evans Prods.*, 775 F.2d at 1088 (even "when there is no likelihood of recurrence," Section 13(b) authorizes other equitable remedies including "the ultimate remed[y] of . . . restitution"); *FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1211 n.27 (N.D. Ga. 2008) (court is "still entitled to grant other equitable remedies"), *aff'd mem.*, 356 Fed. Appx. 358 (11th Cir. 2009); *see also Kansas*, 2015 WL 751358, at \*3 (imposing monetary equitable relief including restitution and disgorgement, but declining to impose forward-looking injunction governing future conduct); *United States v. Moore*, 340 U.S. 616, 619–20 (1951).

**Sur-reply in Opp. to Motion to Dismiss – 14-cv-04785-EMC**                    **Page 7**

Similarly, in *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005), the Court dismissed an appeal as moot because a settlement agreement eliminated the case or controversy that supported the Court's jurisdiction. *Id.* at 1129. Here, there is no such settlement and no change to the FTC's grounds to pursue relief for AT&T's pre-reclassification conduct. Likewise, in *In re Leonard F. Porter, Inc.*, 88 F.T.C. 546 (1976), the Administrative Law Judge relied on a change in company practices—not a change in the lawfulness of those practices—to dismiss the agency's request for relief. *Id.* at 609–11. In this case, as discussed above, reclassification would have no effect on the lawfulness of AT&T's prior conduct. Finally, in *In re American Electric Power Co.*, SEC Rel. No. 28084, 2006 WL 305806 (S.E.C. Feb. 9, 2006), a change in law stripped the Securities and Exchange Commission of authority to award the only relief available to the complaining party—blocking the merger at issue. *Id.* at *2. By contrast, the change in regulatory classification here would not affect this Court's authority under Section 13(b). For the reasons stated above, this is a proper case for equitable remedies to address AT&T's prior violations of Section 5.

**B.     The FCC's Reclassification Order bolsters the activity-based interpretation of Section 5.**

Regardless of the Reclassification Order's application to this particular case, it provides a stark illustration of the problematic nature of the "status-based" test advocated by AT&T. A substantial portion of the FTC's consumer protection enforcement docket involves entities that are involved in the internet ecosystem. As a result, many entities that are subject to FTC oversight are engaged in at least some activities that potentially could qualify as broadband internet access service, and therefore could be deemed to constitute common carriage under the FCC's Reclassification Order.

For example, Google, Inc., which provides Google Fiber service, a form of broadband internet access,[7] has been the focus of FTC enforcement actions, none of which implicate

---

[7] *See* Google Fiber "About" webpage (link in TOA).

1    Google's activities as a provider of broadband internet access.[8]  Under AT&T's status-based test,

2    however, everything Google does could become entirely exempt from the FTC's purview once

3    the Reclassification Order takes effect.

4            Such a result would effectively gut broad areas of the FTC's enforcement program, and

5    could provide a loophole through which less reputable companies could escape FTC scrutiny by

6    establishing or acquiring a small side business involving broadband internet access that arguably

7    could be classified as common carriage.  It could also lead to an unpredictable and ever-shifting

8    "Cheshire Cat" jurisdiction, as practices that traditionally fall within FTC expertise vanish

9    from—or reappear within—FTC jurisdiction based on factors entirely unrelated to the practices

10   at issue (e.g., whether a company buys—or spins off—a division that provides broadband

11   internet services).

12           The FTC is the only federal agency empowered by Congress to address business

13   practices that are anticompetitive, deceptive, or unfair to consumers in broad sectors of the

14   economy.  Therefore, the "activity-based" reading of the common carrier exemption—which, as

15   explained in our Opposition (Dkt. #33), is supported by the text, structure, and intent of the FTC

16   Act—would also avoid "producing absurd results that are inconsistent with [this] statutory

17   scheme."  *Joffe v. Google, Inc.*, 746 F.3d 920, 930 (9th Cir. 2013).

18   **III.    CONCLUSION**

19           For the reasons stated above, the FCC's Reclassification Order does not warrant

20   dismissal of the FTC's lawsuit.  The FTC is entitled to seek relief—including monetary relief—

21   for the millions of customers who were injured in the more than three years that AT&T has

22   engaged in unfair and deceptive conduct.

23

24

25

     _____

26           [8]  *See, e.g.*, *In re Google, Inc.*, FTC Docket No. C-4499 (Dec. 5, 2014) (final consent
     order announced on Dec. 8, 2014, resolving allegations that Google unfairly billed for kids' in-
27   app charges without parental consent) (link to press release in TOA); *In re Google, Inc.*, 152
     F.T.C. 435 (2011) (resolving allegations that Google used deceptive tactics and violated its own
28   privacy promises to consumers when it launched its Google Buzz social network).

**Sur-reply in Opp. to Motion to Dismiss – 14-cv-04785-EMC**                              **Page 9**

Dated:  Mar. 2, 2015                        Respectfully submitted,

                                             _____/s/ Evan Rose_____
                                             EVAN ROSE
                                             MATTHEW D. GOLD
                                             LAURA FREMONT
                                             ERIC EDMONDSON
                                             KERRY O'BRIEN
                                             DAVID M. NEWMAN
                                             LINDA K. BADGER

                                             Attorneys for Plaintiff
                                             FEDERAL TRADE COMMISSION