KELLOGG, HUBER, HANSEN, TODD,
EVANS & FIGEL, P.L.L.C.
Michael K. Kellogg (*pro hac vice*)
Mark C. Hansen (*pro hac vice*)
Email: mkellogg@khhte.com
          mhansen@khhte.com
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999

SIDLEY AUSTIN LLP
David L. Anderson (CA Bar No. 149604)
Email: dlanderson@sidley.com
555 California Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Attorneys for Defendant
AT&T MOBILITY, LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 14-CV-04785-EMC |
| Plaintiff, | **DEFENDANT AT&T MOBILITY LLC'S SUPPLEMENTAL SUR-REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |
| v. | |
| AT&T MOBILITY LLC, a limited liability company, | Hearing Date:  March 12, 2015<br>Time:            9:30 a.m.<br>Judge:          Hon. Edward M. Chen |
| Defendant. | |

1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.      The FCC's Reclassification Order Places AT&T Within the Common-Carrier
        Exemption Even Under the FTC's Reading and Requires Dismissal of this
        Case ................................................................................................................................... 2

II.     Dismissing the Case Furthers the Purpose of the FTC Act ................................................ 8

CONCLUSION ............................................................................................................................. 10

1

**TABLE OF AUTHORITIES**

Page

2

3

**CASES**

4

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013) ........................................................ 8

*Alvarez v. Smith*, 558 U.S. 87 (2009) ........................................................................... 8

*American Elec. Power Co.*, SEC Rel. No. 28084, 2006 WL 305806
    (Feb. 9, 2006) ........................................................................................................ 6

*American Fin. Servs. Ass'n v. FTC*, 767 F.2d 957 (D.C. Cir. 1985) ............................. 4

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ............................................ 3

*Bruner v. United States*, 343 U.S. 112 (1952) ............................................................. 7

*Duldulao v. INS*, 90 F.3d 396 (9th Cir. 1996) .............................................................. 7

*Eddis v. LB&B Assocs., Inc.*, ALJ Case No. 2000-NQW-1, 2001 WL 960049
    (Dep't of Labor 2001) ........................................................................................... 3

*FTC v. Miller*, 549 F.2d 452 (7th Cir. 1977) .......................................................... 8, 9

*FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006) .................................................. 9

*Giant Food Shopping Ctr., Inc.*, 55 F.T.C. 2058 (1959) ......................................... 5, 6

*Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005) ............................ 7

*Hallowell v. Commons*, 239 U.S. 506 (1916) .......................................................... 6, 7

*Haro v. Sebelius*, 747 F.3d 1099 (9th Cir. 2013) ......................................................... 7

*Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997) ............... 3

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) ..................................................... 3

*Leonard F. Porter, Inc.*, 88 F.T.C. 546, 1976 WL 180017 (1976) ........................... 5, 7

*Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) ............................................... 7

*Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355 (1986) ................................... 1, 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................... 7

*Pentheny, Ltd. v. Government of Virgin Islands*, 360 F.2d 786 (3d Cir. 1966) .......... 3, 7

*Pine Tree Med. Assocs. v. Secretary of Health & Human Servs.*, 127 F.3d 118
    (1st Cir. 1997) ....................................................................................................... 7

*Rodriguez v. United States*, 480 U.S. 522 (1987) ........................................................ 8

*Santos v. Guam*, 436 F.3d 1051 (9th Cir. 2006) ........................................................ 7

*Swift & Co.*, 18 Agric. Dec. 464 (U.S.D.A. 1959) ...................................................... 6

**CONSTITUTION AND STATUTES**

U.S. Const.:

    Art. III ....................................................................................................................... 7

    Art. III, § 2 ........................................................................................................... 7, 10

Amendments to Packers and Stockyards Act of 1921, Pub. L. No. 85-909,
    72 Stat. 1749 (1958) ......................................................................................... 5, 6

Communications Act of 1934, 47 U.S.C. § 151 *et seq.* ...................................... 1, 2, 9

    § 503(b)(2)(B) ........................................................................................................ 9

Federal Trade Commission Act of 1914, 38 Stat. 717 ........................... 2, 3, 4, 5, 8, 9

    § 5 ................................................................................................................. *passim*

    § 13(b) .................................................................................................................. 2, 4

15 U.S.C. § 45(a)(2) ................................................................................................ 2, 4, 8

**OTHER MATERIALS**

Annual Report of the Fed. Trade Comm'n (1959), *available at*
    http://www.ftc.gov/sites/default/files/documents/reports_annual/annual-
    report-1959/ar1959_0.pdf ...................................................................................... 6

H.R. Rep. No. 63-1142 (1914) (Conf. Rep.) ................................................................ 4

News Release, FCC, FCC Adopts Strong, Sustainable Rules To Protect the
    Open Internet (Feb. 26, 2015), *available at*
    http://www.fcc.gov/document/fcc-adopts-strong-sustainable-rules-
    protect-open-internet ...................................................................................... *passim*

Report and Order on Remand, Declaratory Ruling, and Order, *Protecting and
Promoting the Open Internet*, GN Docket No. 14-28, FCC 15-2
    (adopted Feb. 26, 2015) ......................................................................................... 1

1

**INTRODUCTION**

2        As explained in AT&T's previous filings, every indicator of statutory meaning – text,

3    structure, legislative history, case law, and previous FTC statements and litigating positions –

4    makes clear that the common-carrier exemption turns solely on the status of the entity in question.

5    *See* Mot. at 9-17; Reply at 2-11.  If the Court agrees, it need not consider the effect of the FCC's

6    Reclassification Order.[1]  Just as it was before the *Reclassification*, AT&T is exempt from

7    regulation under Section 5 because it is a common carrier subject to the Communications Act.

8    The FTC, however, has argued that "[t]he common carrier exemption is triggered when a company

9    is *both* a common carrier in some aspect of its business *and* the activity at issue is subject to the

10   Communications Act's common carriage obligations."  Opp. at 15.  Even if one accepts the FTC's

11   deliberate rewriting of Section 5, the *Reclassification* removes any doubt that AT&T and its

12   mobile data services fall within the common-carrier exemption and that this case must be

13   dismissed.

14       Indeed, the FTC grudgingly acknowledges that, once the *Reclassification* goes into effect,

15   the common-carrier exemption in Section 5 "will likely limit the FTC's prospective enforcement

16   authority over mobile data services."  Sur-Reply at 1.  But, the FTC insists, the *Reclassification*

17   "would not apply to past conduct (and indeed would be unlawful if it did)."  *Id*.  This is a false

18   distinction.  The issue is not whether a particular statutory or regulatory rule change applies

19   retroactively to past conduct and potentially changes the lawfulness of that conduct.  *Id.* at 2, 3, 4.

20   The issue is whether a change to an agency's *jurisdiction* takes effect immediately and divests the

21   agency of authority to prosecute past conduct that is the subject of pending litigation.  On that

22   question, the law is clear:  once its jurisdiction is removed, the agency "literally has no power to

23   act."  *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).  The FTC accordingly

24

25       [1] Report and Order on Remand, Declaratory Ruling, and Order, *Protecting and Promoting
the Open Internet*, GN Docket No. 14-28, FCC 15-2 (adopted Feb. 26, 2015).  As the FTC explains,
26   the text of the Reclassification Order has not yet been released.  Sur-Reply at 1 n.1.  Instead, the
FTC has issued a detailed news release summarizing it.  *See* News Release, FCC, FCC Adopts
27   Strong, Sustainable Rules To Protect the Open Internet (Feb. 26, 2015) (link in TOA).  All
references to the "*Reclassification*" should be understood accordingly.

28

1    lacks the power to investigate its claims, press this lawsuit, or request relief; the action must

2    therefore be dismissed.[2]

3          Likewise, the issue is not which remedies *generally* are available to the FTC and the court

4    in a "proper case" under Section 13(b) of the FTC Act in which the FTC *has authority* over a

5    company.  Sur-Reply at 5, 6, 7.  Again, that argument simply ignores the key question, which is

6    whether the FTC may pursue *any* relief after, as all agree will soon be the case, it no longer has

7    such authority.  It cannot.

8          The FTC spends the first seven pages of its sur-reply trying to make the question of its

9    present authority turn on something other than its present authority.  But, at the end of the day, the

10   FTC's arguments about the lawfulness of AT&T's conduct prior to reclassification, the

11   retroactivity of FCC rules, and the broad remedial power of courts sitting in equity do nothing to

12   rebut this single, dispositive fact:  even under the FTC's reading of Section 5, this case now lacks

13   a plaintiff with the right to be in court.

14                                       **ARGUMENT**

15   **I.    The FCC's Reclassification Order Places AT&T Within the Common-Carrier
            Exemption Even Under the FTC's Reading and Requires Dismissal of this Case**

16
           **A.**    As the FTC acknowledges, the FCC voted to reclassify broadband internet services,
17
     including AT&T's mobile data services, as common carriage.  Sur-Reply at 1.  What is more, the
18
     *Reclassification* is clear that the new regulatory regime will apply to the very subject matter of this
19
     dispute.  The FCC will allow "reasonable network management" for mobile broadband service,
20
     but will monitor that allowance as applied to "customer[s] with 'unlimited' data."  *Reclassification*
21
     at 3.  And the FCC will require enhanced disclosures of, among other things, "network
22
     management practices that can affect service."  *Id.* at 2.  There is thus no question that AT&T's
23
     mobile data services, and the MBR program in particular, are now "subject to" common-carrier
24
     regulation under the Communications Act.  15 U.S.C. § 45(a)(2).
25

26   _____
          [2] The FTC correctly notes that the *Reclassification* is not yet in effect and will be subject to
27   appeal.  Sur-Reply at 1 n.2.  But this question of timing makes little practical difference, because
     this case will not reach final judgment before the *Reclassification* takes effect.  It is thus all but
28   certain that the FTC will lose its ability to press this case at some point during the litigation.

_____

**B.**     The fact that this case concerns, *inter alia*, the lawfulness of *pre*-reclassification conduct is irrelevant to the question of whether the FTC possesses the *present authority* to proceed with this case.  It does not.

**1.**     The FTC misses the point in arguing that dismissal is appropriate only if the *Reclassification* applies "retroactively."  *E.g.*, Sur-Reply at 2, 3, 4 (citing, *inter alia*, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988), and *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994)).  AT&T makes no claim that the *Reclassification* somehow alters the past lawfulness of AT&T's MBR program.  Rather, the FTC *now lacks the authority* to prosecute this case, whether based on past, present, or future conduct.  Changes to jurisdiction take immediate effect, "whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed."  *Landgraf*, 511 U.S. at 274.  "In like manner, the repeal or revocation of an agency's jurisdictional authority without an express reservation clause will result in the loss of the agency's jurisdiction over any pending cases."  *Eddis v. LB&B Assocs., Inc.*, ALJ Case No. 2000-NQW-1, 2001 WL 960049, at *3 (Dep't of Labor 2001) (order); *see also Pentheny, Ltd. v. Government of Virgin Islands*, 360 F.2d 786, 790 (3d Cir. 1966) (an administrative agency's "jurisdiction, although once obtained, may be lost . . . , and in such a case proceedings cannot validly be continued beyond the point at which jurisdiction ceases").[3]

**2.**     The text of the FTC Act makes clear that the FTC lacks the necessary authority to continue to press this case.  Section 5 of the Act states that the FTC is

> **empowered** and directed to **prevent** persons, partnerships, or corporations, except banks, savings and loan institutions described in section 57a(f)(3) of this title, Federal credit unions described in section 57a(f)(4) of this title, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to part A of subtitle VII of title 49, and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act, 1921, as amended [7 U.S.C. 181 et seq.], except as provided in section 406(b) of said

---

[3] The FTC wrongly cites *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 950 (1997), in arguing that even "jurisdictional" changes are subject to the presumption against retroactivity.  Sur-Reply at 4 n.3.  In *Hughes*, the amendment in question "essentially create[d] a new cause of action" against the defendant, thus "'attach[ing] a new disability, in respect to transactions or considerations already past.'"  520 U.S. at 948, 950 (quoting *Landgraf*, 511 U.S. at 269) (further internal quotation marks omitted).  That is not remotely the case here.

1    Act [7 U.S.C. 227(b)], from using unfair methods of competition in or affecting
     commerce and unfair or deceptive acts or practices in or affecting commerce.

2    15 U.S.C. § 45(a)(2) (emphases added).  The text and structure of this grant of authority makes

3    clear that, when a person, partnership, or corporation falls within one of the exemptions – as

4    AT&T indisputably now does – the FTC is *not* "empowered" to do anything.  Like all federal

5    agencies, the FTC "is a creation of Congress."  *American Fin. Servs. Ass'n v. FTC*, 767 F.2d 957,

6    965 (D.C. Cir. 1985).  "The extent of its powers can be decided *only* by considering the powers

7    *Congress* specifically granted it in the light of the statutory language and background."  *Id.*

8    (internal quotation marks omitted; emphases added).  Here, because it lacks statutory authority

9    over the subject matter of this case, the FTC "literally has no power to act."  *Louisiana Pub. Serv.*

10   *Comm'n*, 476 U.S. at 374.  It therefore lacks the authority to investigate AT&T's activities –

11   regardless of when they occurred – press this case, or obtain relief from the Court.[4]

12        The FTC is correct that case law establishes that, under the FTC Act (Section 13(b)),

13   courts may adopt equitable remedies for prior harm.  *See* Sur-Reply at 5-7.  However, the broad

14   remedial power of *a court* sitting in equity says nothing about the present legal authority of *the*

15   *FTC*.  Indeed, the FTC's argument proves far too much.  Under the FTC's logic, if AT&T's past

16   conduct violated Section 5, then the FTC may pursue any remedy a court sitting in equity is

17   empowered to award.  *See id.* at 5-6.  Yet the FTC rightly concedes that it cannot pursue injunctive

18   relief that would govern present or future conduct.  *See id.* at 7 ("The FTC would retain an interest

19   in obtaining equitable relief – including monetary relief – for the harm suffered by the millions of

20   consumers impacted by AT&T's unlawful practices *during the period that AT&T has provided*

21   *mobile data on a non-common carrier basis*.") (emphasis added).  It is apparent why the FTC

22   makes this concession:  the FTC cannot pursue an injunction without the contemporaneous

23

24   ───────────────

25        [4] The prospective authority granted by the term "empowered" is confirmed by Section 5's
     textual aim:  empowering the FTC "to prevent" unfair or deceptive acts or practices.  15 U.S.C.

26   § 45(a)(2).  Prevention is forward-looking and requires contemporary authority.  *Cf.* Compl. at 13
     (requesting an injunction "to prevent future violations" of Section 5).  Indeed, Congress was clear

27   that Section 5 grants the FTC the present authority to prevent violations of the law.  *See* H.R. Rep.
     No. 63-1142, at 18 (1914) (Conf. Rep.) ("Section 5 . . . empowers the commission, after hearing, *to*
     *order the discontinuance of the use of such methods*.") (emphasis added).

28

1    authority to act as to that conduct.  So it is with any other form of relief.  The court enjoys broad

2    remedial discretion, but this plaintiff is powerless to request it.

3          **3.**     Respecting the limited nature of an agency's statutory authority, and the

4    settled rule that changes to jurisdiction take immediate effect, the FTC has repeatedly

5    acknowledged that its authority under Section 5 is contingent on contemporaneous authority over

6    the regulated entity.  Tellingly, although the FTC struggles in vain to distinguish these cases, it

7    offers no authority – whether before an administrative agency or a court – suggesting that any

8    other principle applies.

9          *Leonard F. Porter, Inc.*, 88 F.T.C. 546, 1976 WL 180017 (1976), is particularly

10   instructive.  There, the FTC dismissed its complaint against Porter and his company because,

11   following Porter's allegedly deceptive practices, the company had stopped selling its products out-

12   of-state – *i.e.*, in interstate commerce.  *Id.* at *48.  Concluding that Porter and his company were

13   "not now subject to Commission jurisdiction," the FTC dropped its case.  *Id.* at *48, *58.  The

14   FTC says that the change in *Porter* was "a change in company practices," "not a change in the

15   lawfulness of those practices," Sur-Reply at 8, but that misses the point entirely.  The FTC is quite

16   right that the lawfulness of the past conduct was not considered in *Porter*, just as the Court need

17   not consider that here.  The key fact, however, is that dismissal was required because, given the

18   changed circumstances, the FTC lacked the *present* authority to proceed.  Here, just as in *Porter*,

19   the *Reclassification* deprives the FTC of ongoing authority to maintain its complaint.

20         Likewise, the FTC has given immediate effect to expansions of its authority in pending

21   proceedings.  In *Giant Food Shopping Center, Inc.*, 55 F.T.C. 2058 (1959), Giant claimed that it

22   could not be pursued for violations of the FTC Act because it had the status of a "packer" and was

23   thus subject to the Packers and Stockyards Act exemption.  *Id.* at 2058-59.  However, following

24   the FTC's complaint, Congress amended the Packers and Stockyards Act exemption to create the

25   activity-based exemption in place today.  *Id.* at 2062; *see also* Mot. at 10-11; Reply at 6.  The FTC

26   held that the 1958 amendment was "applicable to proceedings pending before the Commission at

27   the time it became effective" and thus that authority over Giant was proper.  *Giant Food*, 55

28

1  F.T.C. at 2062.  It was of no moment that the conduct at issue took place prior to the grant of

2  authority.

3         The rule that federal agencies require contemporaneous authority over regulated entities

4  applies across federal agencies.  As the FTC reported in 1959, "[o]ne concrete development

5  resulting from" the 1958 amendment to the Packers and Stockyards Act exemption "was the

6  dismissal of a complaint, which had been filed by the Secretary of Agriculture against Swift & Co.

7  on charges of engaging in unfair or discriminatory practices."  Annual Report of the Fed. Trade

8  Comm'n 12 (1959) (link in TOA).  In that case, the Department of Agriculture's hearing officer

9  reasoned that the jurisdictional realignment created a "considerable problem as to whether the

10  Secretary has jurisdiction to complete this proceeding since there is no specific 'savings clause' in

11  the amendments for proceedings pending before the Secretary at the time of the amendments."

12  *Swift & Co.*, 18 Agric. Dec. 464, 465 (U.S.D.A. 1959).  The hearing officer thus accepted Swift's

13  argument that "the Secretary lost jurisdiction" when the amendments took effect.  *Id.*  Similarly, in

14  *American Electric Power Co.*, SEC Rel. No. 28084, 2006 WL 305806 (Feb. 9, 2006) (order), the

15  Securities and Exchange Commission ("SEC") reviewed the lawfulness of the merger of two

16  energy companies under the Public Utility Holding Company Act of 1935 ("PUHCA").  While the

17  proceedings were ongoing, PUHCA was repealed.  *Id.* at *2.  The SEC determined that the repeal

18  "mooted" the case, because the agency lacked the continuing authority to decide it.  *Id.*[5]

19         As in an agency proceeding, the authority to sue in federal court can also disappear in the

20  middle of a case.  Thus, in *Hallowell v. Commons*, 239 U.S. 506 (1916), the Supreme Court

21  affirmed the dismissal of a suit to establish equitable title because, following the filing of the

22  lawsuit, the jurisdiction to decide such rights had been shifted from the courts to the Secretary of

23  the Interior.  *Id.* at 508.  Writing for the Court, Justice Holmes explained that Congress made the

24  Secretary's jurisdiction "exclusive in terms [and] made no exception for pending litigation."  *Id.*  It

25  

26      [5] The FTC attempts to marginalize *American Electric* by pointing to the SEC's limited menu of remedies.  Sur-Reply at 8.  But, in fact, the SEC squarely concluded that it "no longer ha[d] legal

27  authority to either approve or deny the merger application."  *American Elec.*, 2006 WL 305806, at *2.  Once more, the lawfulness of the parties' acts "when they occurred," Sur-Reply at 3, was irrelevant to the question whether the agency had present authority.

28

1   was therefore "unnecessary to consider whether there was jurisdiction when the suit was begun."

2   *Id.*; *see also Bruner v. United States*, 343 U.S. 112, 116-17 (1952); *Santos v. Guam*, 436 F.3d

3   1051, 1052 (9th Cir. 2006).

4       This universal principle of jurisdiction is dispositive.  If, as a result of the *Reclassification*,

5   AT&T is subject to the common-carrier exemption, then AT&T is, in the words of the FTC, "not

6   now subject to Commission jurisdiction."  *Porter*, 1976 WL 180017, at *48.  Obviously, the

7   existence of an "exception for pending litigation," *Hallowell*, 239 U.S. at 508, would preserve the

8   FTC's jurisdiction over this case.  But the FTC points to no such mechanism, whether statutory or

9   regulatory, to apply here.  The FTC thus loses jurisdiction over pending cases under the default

10  rule.  *See Bruner*, 343 U.S. at 116-17 ("[W]hen a law conferring jurisdiction is repealed *without*

11  *any reservation as to pending cases*, all cases fall with the law . . . .") (emphasis added); *accord*

12  *Duldulao v. INS*, 90 F.3d 396, 399 (9th Cir. 1996); *Pentheny*, 360 F.2d at 790.

13      **4.**    The *Reclassification*, insofar as it takes away the FTC's authority to

14  proceed, also implicates this Court's subject-matter jurisdiction.  Article III, Section 2, of the

15  Constitution limits the federal courts to "deciding actual cases and controversies" and "requires

16  that a live controversy persist throughout all stages of the litigation."  *Gator.com Corp. v. L.L.*

17  *Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005).  Thus, "it is not enough that a dispute was

18  very much alive when suit was filed."  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477

19  (1990).  Article III's "case-or-controversy requirement subsists through all stages of federal

20  judicial proceedings, trial and appellate."  *Id.*

21      A crucial element of a valid case or controversy is a plaintiff with "a legally cognizable

22  interest in the outcome" of the case.  *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2013); *see*

23  *also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (Article III standing requires that

24  plaintiff's interest in the case be a "legally protected" one).  Conversely, "if intervening events

25  leave the parties without a 'legally cognizable interest' in [the court's] resolution of the issue," the

26  case becomes moot.  *Pine Tree Med. Assocs. v. Secretary of Health & Human Servs.*, 127 F.3d

27  118, 121 (1st Cir. 1997) (emphasis added).  That is precisely what has happened here.

28

1    In light of the *Reclassification*, all agree that AT&T's mobile data services fall within

2    Section 5's common-carrier exemption under the FTC's previously articulated understanding of

3    that exemption.  *See* Sur-Reply at 1.  That means that, unlike as against other "persons,

4    partnerships, or corporations," the FTC, under its own statutory interpretation, is *not* "empowered"

5    by statute to enforce Section 5 as against AT&T.  15 U.S.C. § 45(a)(2).  Without that statutory

6    empowerment, the FTC has no authority.  It therefore lacks a legal interest in the outcome of the

7    case.

8    The FTC's claim (Sur-Reply at 3, and which AT&T denies) that AT&T's past acts "were

9    unlawful when they occurred" is not relevant to the question of mootness.  "Rather, it is an

10   abstract dispute about the law, unlikely to affect th[is] plaintiff[ ] any more than" anyone else.

11   *Alvarez v. Smith*, 558 U.S. 87, 93 (2009).  Indeed, the Supreme Court has made explicit that a case

12   can become moot "[n]o matter how vehemently the parties continue to dispute the lawfulness of

13   the conduct that precipitated the lawsuit," if the dispute no longer concerns "*the plaintiff['s]*

14   particular legal rights."  *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (internal quotation

15   marks omitted; emphasis added).

16   **II.    Dismissing the Case Furthers the Purpose of the FTC Act**

17   Seeking to reargue the underlying merits, the FTC renews its concern that AT&T's status-

18   based reading of Section 5 will allow companies to "escape FTC scrutiny."  Sur-Reply at 9.  As

19   previously explained, the FTC can point to nothing in the one-hundred-year history of Section 5 to

20   support its fear.  *See* Reply at 8-9.[6]  And it remains the case that, since *FTC v. Miller*, 549 F.2d 452

21   (7th Cir. 1977), the FTC has repeatedly sought a legislative amendment to fix this supposed

22   statutory problem, without success in Congress.  *See* Reply at 9-11.  Thus, as currently written, the

23   FTC Act reflects more than just a single-minded purpose to subject as many firms as possible to

24   FTC scrutiny.  *See Rodriguez v. United States*, 480 U.S. 522, 526 (1987) ("[I]t frustrates rather than

25   effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary

26

27        [6] Moreover, as explained in AT&T's Reply (at 9 n.4), the FTC has capably dealt with the
     types of contrived attempts to escape FTC scrutiny the FTC now claims to fear.

28

objective must be the law."). Section 5 expressly excludes common carriers, among other entities, from its otherwise broad coverage. If the FTC believes that the plain text and longstanding interpretation (including, repeatedly, by the FTC itself) of Section 5 "could" constrain its ability to regulate Google or any other entity in a way that is contrary to the public interest, Sur-Reply at 9, it should return to Congress and again seek to change the statute.[7]

In any event, far from allowing AT&T to "escape" regulation, dismissing this case will effectuate Congress's purpose in crafting the Section 5 exemption: preventing overlapping and duplicative agency action. *See FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 57 (2d Cir. 2006) ("Thus, for the purpose of preventing interagency conflict, the FTC Act common-carrier exception was created."); *Miller*, 549 F.2d at 457 (describing the "purpose of avoiding inter-agency conflicts that underlies the exemption"). As AT&T explained in prior filings, the FCC has consistently regulated the provision of broadband data services throughout the period in question. Accordingly, there is no "regulatory gap" of the sort feared by the FTC. Indeed, the FCC has been actively investigating the very conduct at issue in this case, and AT&T has learned that the full Communications Commission is currently considering issuing a Notice of Apparent Liability against AT&T. Reply at 12. The *Reclassification* further explains (at 2, 3) that the FCC will impose additional regulations on network management practices, "unlimited" data plans, and disclosures about network performance.

Congress, moreover, gave the FCC power to impose substantial forfeitures for each "violation" of the Communications Act. *See* 47 U.S.C. § 503(b)(2)(B). The FTC cannot plead for jurisdiction not granted to it by Congress on the grounds that the FCC remedies established by Congress are "not . . . a substitute for the relief sought by the FTC." Sur-Reply at 5 n.5. Congress

_____

[7] The FTC complains that AT&T's status-based test could "lead to an unpredictable and ever-shifting 'Cheshire Cat' jurisdiction" whenever the FCC decides, as here, to reclassify certain services as common carriage and thereby remove them from "FTC expertise." Sur-Reply at 9. But that result is an inevitable function of the statutory scheme and is not peculiar to AT&T's reading of Section 5. Whenever the FCC reclassifies services as Title II common carriage under the Communications Act, more carriers (on AT&T's reading) or more activities (on the FTC's view) will fall within the statutory exemption, thereby limiting FTC jurisdiction. AT&T's approach, which focuses on the status of common carriers rather than an "ever-shifting" array of activities, is in fact far less "unpredictable" than that proposed by the FTC.

1  decided that FCC remedies were appropriate for common carriers and that FTC remedies were

2  not.  That is a choice for Congress, and Congress alone, to make.

3                              *        *        *        *        *

4        For the reasons explained in AT&T's prior filings, the FTC never had jurisdiction to file

5  this case.  But, even if it once did, it definitively lacks it now.  The *Reclassification* has removed

6  any doubt that AT&T qualifies for the Section 5 exemption for common carriers.  As a result, the

7  FTC lacks the contemporaneous authority to press this lawsuit, and this Court lacks subject-matter

8  jurisdiction over the case under Article III, Section 2, of the Constitution.

9                                  **CONCLUSION**

10        For the foregoing reasons, the motion to dismiss should be granted.

11  Dated: March 5, 2015                       Respectfully submitted,

12                                             KELLOGG, HUBER, HANSEN, TODD,
                                               EVANS & FIGEL, P.L.L.C.
13
                                               By:    /s/ *Michael K. Kellogg*
14                                                     Michael K. Kellogg

15                                             Attorney for Defendant
                                               AT&T Mobility, LLC
16

17

18

19

20

21

22

23

24

25

26

27

28