TILLOTSON LAW
JEFFREY M. TILLOTSON (SBN 139372)
jtillotson@TillotsonLaw.com
1807 Ross Avenue, Suite 325
Dallas, TX 75201
Telephone: (214) 382-3040

REESE MARKETOS LLP
PETER D. MARKETOS (pro hac vice)
pete.marketos@rm-firm.com
750 North Saint Paul Street, Suite 600
Dallas, TX 75201
Telephone: (214) 382-9810

Attorneys for Defendant AT&T Mobility LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>AT&T MOBILITY LLC, a limited liability company,<br><br>  Defendant. | Case No. 3:14-cv-04785-EMC<br><br>**DEFENDANT AT&T MOBILITY LLC'S REPLY TO *ROBERTS* PLAINTIFFS' RESPONSE TO FTC'S MOTION TO APPROVE STIPULATED ORDER IN FTC ACTION**<br><br>Date: December 3, 2019<br>Time: 1:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Courtroom: 5, 17th Floor (San Francisco) |

The *Roberts* plaintiffs' response to the FTC's motion declares that they do not "second guess the FTC's determination" that the proposed stipulated order "represents an appropriate resolution" of the FTC action. Dkt. No. 193, at 4-5, *FTC v. AT&T Mobility LLC* ("FTC action"), No. 3:14-cv-04785-EMC. AT&T agrees—which should end the matter as far the *Roberts* plaintiffs are concerned.

Nonetheless, the *Roberts* plaintiffs go on to ask the Court to "clarify" that, although payments under the proposed stipulated order "may support a partial set-off for AT&T for some of the damages/restitution sought" on behalf of the putative California class in *Roberts*, the stipulated order "does not otherwise affect the claims or relief available in *Roberts*." *Id.* at 1-2.

That request is improper for at least three reasons.

*First*, it is already clear that the proposed stipulated order in the FTC action does not release the claims of private parties. As AT&T has previously stated, the stipulated order does not purport to have preclusive effect on the claims of other parties. Dkt. No. 150, at 1, *Roberts v. AT&T Mobility LLC*, No. 3:15-cv-03418-EMC. Thus, the *Roberts* plaintiffs' claims—and those of any other consumer—would not be automatically released by entry of the stipulated order. *See Sierra Club v. N. Dak.*, 868 F.3d 1062, 1067 (9th Cir. 2017) (holding that consent decree with EPA "does not actually extinguish" the States' separate claims because "[n]owhere in the Consent Decree are the States' claims or grievances identified or even referenced," and thus "[b]y its very terms, the Consent Decree does not dispose of . . . the States' independent claims").

*Second*, the *Roberts* plaintiffs failed to seek leave of Court to intervene in the FTC action before purporting to file a "response" to the FTC's motion. Nor would they have qualified for intervention had they requested it. Their "response" to the FTC's motion should be rejected for that reason alone.[1]

---

[1] It is settled that "those who object to the entry of a consent judgment must seek to intervene in the proceedings . . . ." *United States v. LTV Corp.*, 746 F.2d 51, 61 (D.C. Cir. 1984). The *Roberts* plaintiffs failed to do so. Nor could they have done so under Federal Rule of Civil Procedure 24. They could not intervene as of right because, among other reasons, their interest is "adequately represented by the existing parties in the lawsuit"—here, the FTC. *United States v. Sprint Comm'cns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (internal quotation marks omitted). And they are not entitled to permissive intervention because it would "unduly delay or prejudice the adjudication of the original parties' rights." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470,

*Third*, to the extent that the *Roberts* plaintiffs seek a judicial determination about the various ways that the resolution of the FTC action might alter the course of the *Roberts* litigation, that request is premature. Instead, the impact of the stipulated order on the *Roberts* litigation should be considered when that issue is relevant in the *Roberts* litigation.

For example, the *Roberts* plaintiffs concede that AT&T might be entitled to a set-off in *Roberts,* if liability is established*,* for any payments made under the stipulated order to the California customers in the putative class. Dkt. No. 193, at 2. But there is no need to address the scope and extent of that set-off now—especially given that AT&T's appeal of the denial of its arbitration motion as to the California plaintiffs in *Roberts* is still pending. *See Roberts v. AT&T Mobility LLC*, No. 18-15593 (9th Cir.). If AT&T prevails in either the Ninth Circuit or the Supreme Court, those plaintiffs' claims would be arbitrated—meaning that the impact of the stipulated order would be for an arbitrator to decide. *See*, *e.g.*, *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.").

Similarly, it is also premature to analyze the impact of the injunctive relief under the stipulated order on the injunction claims in *Roberts*. We agree with the *Roberts* plaintiffs that "the injunctive relief provisions in the FTC Agreement . . . constitute positive achievements to be sure[.]" Dkt. No. 193, at 4, FTC action, *supra*. The *Roberts* plaintiffs assert that they might wish to seek additional injunctive relief. *Id.* To the extent they are permitted to litigate in this Court, they are not formally precluded from attempting to request a different injunction. But under

---

473 (9th Cir. 1992). As the D.C. Circuit observed long ago, a federal agency "can bring the large number of enforcement actions it does only because in all but a few cases consent decrees are entered," and the "intervention of a private plaintiff might tend to discourage or at least complicate efforts to obtain a consent decree." *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (D.C. Cir. 1972); *see also* 7C Mary Kane, Federal Practice & Procedure § 1909 (3d ed. Supp. 2019) (citing cases denying intervention by private plaintiffs because "in the absence of a very compelling showing to the contrary, it will be assumed that the United States adequately represents the public interest"). Indeed, courts often reject intervention by private plaintiffs who seek to oppose consent decrees. *See*, *e.g.*, *United States v. G. Hielemann Brewing Co.*, 563 F. Supp. 642, 647-50 (D. Del. 1983) (denying motion to intervene to oppose consent decree in governmental antitrust enforcement action); *United States v. Atl. Richfield Co.*, 50 F.R.D. 369, 371-72 (S.D.N.Y. 1970) (same).

established principles of equity, the Court would be required to consider any changes to the status quo (such as the fact that alleged practices challenged in the *Roberts* complaint will have been altered by the injunctive relief under the stipulated order). As the Supreme Court has explained, "[a]n injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief"—including "'significant changes in the law or circumstances[.]'" *Salazar v. Buono*, 559 U.S. 700, 715 (2010) (quoting 11A Charles Alan Wright *et al.*, *Federal Practicve and Procedure* § 2961, at 393-94 (2d ed. 1995)).

Moreover, if *Roberts* were to reach the class-certification stage, the comprehensive remedies provided for in the stipulated order would be relevant to this Court's analysis of whether a class could be certified.[2] In determining whether predominance and superiority have been satisfied, courts frequently consider the impact of the relief provided under consent decrees in related government enforcement actions. *See*, *e.g.*, *Imber-Gluck v. Google Inc.*, 2015 WL 1522076, at *2-4 (N.D. Cal. Apr. 3, 2015) (in light of FTC settlement, class action not superior because consumers can get relief from FTC settlement); *Conde v. Sensa*, 2018 WL 4297056, at *14-16 (S.D. Cal. Sept. 10, 2018) (same).

The parties in *Roberts* will have the opportunity to address these issues if that action continues in this Court following the resolution of AT&T's appeal and advances past the pleadings stage. But it would be improper to consider them now or delay entry of the stipulated order in the FTC action until they can be decided.

Finally, we note that the Court has asked the FTC about its calculation of the potential recovery in the FTC action and the number of consumers eligible to receive payments under the proposed stipulated order. Dkt. No. 194, FTC action, *supra*. We write on this point only to note that recent developments highlight the risks that the FTC would face if it continued to litigate the

---

[2] The operative complaint in *Roberts* sought certification of a nationwide class of AT&T customers. Dkt. No. 11, ¶ 51, *Roberts*, *supra*. But in light of the Court's order compelling arbitration of the claims of the non-California plaintiff (Dkt. No. 103, at 1-2, *Roberts*, *supra*), the *Roberts* plaintiffs now confirm that they "intend to pursue" claims on behalf of a putative class consisting of only customers "in California[.]" Dkt. No. 193, at 4, FTC action, *supra*.

action rather than reach agreement. In particular, there is a very real possibility that the FTC might be declared to have no power to seek restitution at all. On November 1, 2019, the Supreme Court granted review in *Liu v. SEC*, No. 18-1501, to decide whether the SEC's statutory authority to seek "equitable relief" in enforcement proceedings includes the power to seek disgorgement (*i.e.*, monetary payments). The FTC faces a similar potential limitation on its authority: the Federal Trade Commission Act authorizes the FTC to seek "injunction[s]," but does not by its terms authorize restitution. 15 U.S.C. § 53(b). And the Supreme Court is poised to consider a petition for *certiorari* asking whether the FTC has any statutory authority at all to demand monetary relief, such as restitution, in enforcement actions. *See AMG Capital Mgmt., LLC v. FTC*, No. 19-508 (U.S.) (pet. for cert. filed Oct. 18, 2019). There is a clear circuit split on the issue.[3] Thus, if litigation in the FTC action were to continue, there is a very real possibility that the agency's prospects of seeking restitution in this case could change dramatically.

## CONCLUSION

The Court should approve and enter the proposed stipulated order.

Dated: November 29, 2019

REESE MARKETOS LLP

  /s/  Pete Marketos

Jeffrey M. Tillotson (SBN 139372)
TILLOTSON LAW
1807 Ross Avenue, Suite 325
Dallas, TX 75201
Telephone: (214) 382-3040
jtillotson@TillotsonLaw.com

Pete Marketos (*pro hac vice*)
REESE MARKETOS LLP
750 North Saint Paul Street, Suite 600
Dallas, TX 75201
Telephone: (214) 382-9810
pete.marketos@rm-firm.com

*Attorneys for Defendant AT&T Mobility LLC*

---

[3]   *Compare FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 786 (7th Cir. 2019) (holding that "section 13(b)'s permanent-injunction provision does not authorize [the FTC to seek] monetary relief") *with, e.g., FTC v. AMG Capital Mgmt., LLC*, 910 F.3d 417, 426 (9th Cir. 2018) (adhering to prior circuit precedent permitting FTC to seek restitution, but noting "force" of argument to the contrary).

4
AT&T'S REPLY IN SUPPORT OF MOTION TO APPRPOVE STIPULATED ORDER IN FTC ACTION
Case No. 3:14-cv-04785-EMC